**William Edward WOOD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–90–00562–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 12, 1991.

Stanley Schneider, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., J. Harvey Hudson, Pat Pattillo, Asst. Harris County Dist. Attys., for appellee.

Before TREVATHAN, C.J., and COHEN and O'CONNOR, JJ.

## OPINION

O'CONNOR, Justice.

William Edward Wood, appellant, appeals from a conviction for aggravated assault. The trial court assessed appellant five years and a $5,000 fine, and probated both parts of the sentence. We affirm.

Appellant and Kirk, the complainant, had known each other for over eight years and considered themselves friends. At the time of the assault, Kirk lived in a house with her son, who was 16 years old, and Rhonda Wade, who was 17 years old. Appellant met Wade at Kirk's house and invited her out. Appellant gave Wade money to go shopping and lent her his car. Wade put a dent in his car, and when she told him, he got mad. After drinking all afternoon, appellant took Wade to a club and continued to drink. At some point in the evening, Wade called Kirk to come get her, and Kirk and Buster met them at the club. The four of them then went to another club, and finally about 2:00 a.m., they all went to appellant's house. Kirk testified that she went to appellant's home because appellant had invited her, and because she was concerned for Wade, who had told her she was scared.

When Kirk and Buster arrived at the house, Kirk knocked on the door, and heard a loud bang. A few minutes later when the appellant opened the door, Kirk smelled gun powder and saw that he was holding a pistol. Once inside the house, Kirk saw Wade sitting on a sofa with another girl, Bitsy. Kirk went over to where appellant was sitting to talk him into putting the gun down. As she was standing above him, Kirk testified appellant pointed the pistol between her eyes and said "I'll kill you, bitch." She responded, "You won't get a better chance." Then appellant struck Kirk with the gun across the side of her

neck. About that time, Kirk started getting scared and decided to leave.

Kirk and Buster left the house, but Kirk turned back to get Wade. The three of them then left appellant's house and walked to their car. On the way to the car, they heard appellant on the porch shout "stop." Seconds later, they heard a loud noise, and Kirk felt a sharp pain in her leg and realized she had been shot. They did not see the person who shot Kirk. The three of them got into the car and drove Kirk to a hospital. Kirk was treated for a gunshot wound to the right inner knee. No bullet was recovered from her leg. The hospital staff notified the police; however, no police came to the hospital to file a report. Kirk stated that she notified the police 10 days later.

At trial, Kirk testified that appellant offered to pay her money to drop the charges. Kirk said she accepted about $50 that appellant left with Little, her boss and a friend of appellant's. Kirk understood the money was to pay for the emergency room bill. Kirk testified that Little also talked to her about dropping the charges against appellant. When she refused, he fired her.

Little was called to testify by appellant. He said he had known both Kirk and appellant for about 13 years, and considered them both good friends. Little denied he fired Kirk because she would not drop the charges against appellant. Instead, he said that Kirk told him she expected appellant to pay her in exchange for not pressing charges.

## 1. Admissibility of evidence

In point of error one, appellant complains that the court erred in overruling the objection to the admission of Kirk's statement to the police, State's exhibit number two. Appellant objected that it contained hearsay attributed to other persons and amounts to improper bolstering of Kirk.

The main text of Kirk's statement reads:
I introduced a girl friend of mine Rhonda Wade to a friend of mine named Eddie Wood [appellant]. A few of us went out one time and then he called Rhonda and came over to my house and picked her up. I later found out that Eddie took Rhonda to his house and gave her $200 dollars to go shopping.
While Rhonda was at the shopping center some one backed into Eddie's car. When Rhonda got back to Eddie's house he was drunk and when he found out his car had been hit he got mad.
Eddie and Rhonda then went out to a club called Byrnies. Rhonda called me from the club and asked me to come and get her as he was acting crazy.
I went to the club with my boyfriend John Buster Word. I saw Rhonda and she said that Eddie had started three fights. The manager of the club came over to me and asked me to get Eddie out of the club.
We all four left the club and then went to another club called Boggarts. We were at the club and it was almost closing time and Eddie invited Buster and my self to come over to his house for a drink after the club closed. Rhonda kept asking me not to leave her alone.
Rhonda and Eddie left and then Buster and I left and went over to Eddie's house. I knocked on the door and said "it's me Debra" and I heard a bang. Eddie then opened the door and asked us in. We walked in the door and noticed a gun in his hand. I told him to put it up and he got mad and said he would kill me. I told him that he did not scare me and he stood up and hit me with a pistol. I think it was a 38 revolver.
I started crying and Buster came out and said lets go and we went out the front door. When we got outside I knew that I could not leave Rhonda so I went back inside and got Rhonda and she was dressed only in a Tee shirt and panties as Eddie had told her to take off the clothes that he had bought her earlier in the day. Rhonda went out first and then myself and then Buster. They went to the drivers side and I was walking toward the passenger side when I was at the rear of Eddie's car he came out side and said stop and then he shot and hit me on the inside of the right leg. I got down on

the ground between the two cars and got in the driver's side and then Buster drove me to the hospital.

The determination of admissibility is within the sound discretion of the trial court. *Jackson v. State*, 575 S.W.2d 567, 570 (Tex.Crim.App.1979). The trial court's determination that evidence is admissible will not be reversed on appeal unless the trial court clearly abuses its discretion. *Werner v. State*, 711 S.W.2d 639, 643 (Tex.Crim.App.1986); *Nubine v. State*, 721 S.W.2d 430, 432 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd).

The offer of the statement and appellant's objection follows:

The State: Your Honor, I would offer State's exhibit 2 and I am tendering to defense counsel as has been previously tendered to the defense counsel. I offer it into evidence.

Defense counsel: Object to it, Your Honor, as bolstering the witness.

The State: Your Honor, under 801(e) subsection (1)(B) this is a prior consistent statement of the witness and is exempt to the hearsay.

Defense counsel: I don't think that's correct. He's offering a statement previously made for the purposes of bolstering the witness; and it also contains hearsay attributed to other persons which we can't cross-examine at this time. We would object to it coming in.

The State: In fact, your Honor, I will correct myself. This is a statement which is not hearsay by definition. The same section 801(e)(1) is a prior statement by a witness and it may be offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive; and it is precisely what the Defense is seemingly alleging and that is why the State is offering State's exhibit 2.

Defense counsel: Same objection, your Honor. Contains hearsay. He has not made the proper predicate at this time. Perhaps he might be able to do that at a later time after further evidence in this case; but, at this point I don't think there are grounds for it.

The Court: Proper predicate is a general objection and one the Court will not entertain. Do you want to make your objection more specific?

Defense counsel: Attempt to bolstering. It also contains hearsay statements attributed to other parties which allows those statements in without giving us a chance to talk to those people or cross-examine those people and we would object to it for all those grounds.

The Court: Objection is overruled.

■■■ If the parts of Kirk's statement are hearsay, a matter we are not required to decide, it was not error to overrule the objection to the admission of the statement. When an exhibit contains both admissible and inadmissible material, the objection must specifically refer to the material that is objectionable. *Brown v. State*, 692 S.W.2d 497, 501 (Tex.Crim.App.1985). If the party who objects to an exhibit does not specify which part of the exhibit is not admissible, the error in admitting the exhibit is not preserved for review. *Id.* The party who objects to an exhibit must identify which statements are hearsay and should be excised from the document. *Porter v. State*, 623 S.W.2d 374, 385 (Tex.Crim.App.1981) (defendant waived the error when he did not identify specific statements on a tape recording that were hearsay and thus inadmissible).

■■ The court expressly asked appellant to make his objection more specific. In response, appellant did not identify the statements that were hearsay. Thus, appellant did not preserve the error. If appellant had been more specific, the court would have had the opportunity to exclude the hearsay statements and admit the remainder of the complaint. *Porter*, 623 S.W.2d at 385.

We overrule appellant's point of error one.

## 2. Misjoinder

In point of error two, appellant complains that the trial court erred in denying appellant's motion to elect on the court's charge to the jury on guilt or innocence.

In point of error three, appellant complains that his right to a fair trial was abrogated by the trial court's denial of the motion because multiple acts could have been the basis for any conviction.

The jury charge contained three questions—one question on attempted murder, one question on aggravated assault, and one question on not guilty. The jury was instructed it could convict appellant of only one offense. The indictment contained three paragraphs, each alleging an assault by appellant against the complainant on the same date. The first paragraph alleged attempted murder by shooting the complainant. The second alleged aggravated assault by using a firearm to cause bodily injury. The third paragraph alleged aggravated assault by using a firearm to threaten the complainant. The jury acquitted appellant of attempted murder.

Two or more offenses may be joined in a single indictment, information, or complaint, with each offense stated in a separate count, if the offenses arise out of the same criminal episode. TEX.CODE CRIM. P.ANN. art. 21.24(a) (Vernon 1989). A criminal episode is the commission of two or more offenses regardless of whether the harm is directed toward or inflicted upon more than one person or item of property, if the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan. TEX.PENAL CODE ANN. § 3.01 (Vernon Supp. 1991).

■ Misjoinder, as prohibited by statute, does not include the allegation of two offenses in a single indictment, where one offense is a lesser included offense of the other. *Washington v. State*, 771 S.W.2d 537, 546 (Tex.Crim.App.1989). If the State alleges more than one offense in an indictment, but the jury is only permitted to make one finding of guilty, the appellant cannot show harm. *Ponder v. State*, 745 S.W.2d 372, 374 (Tex.Crim.App.1988).

■ A violation of TEX.CODE CRIM. P.ANN. art. 21.24 does not necessarily constitute reversible error; rather, once error was shown to have occurred, a harm analysis is appropriate. *Ponder*, 745 S.W.2d at 374. If the jury finds appellant guilty of only one offense, then there are no multiple convictions. *Id.* Thus, there is no reversible error. *Id.*

If the trial court erred in not granting the motion to elect, the error is harmless. The jury charge only allowed the jury to find appellant guilty of one offense. *Ponder*, 745 S.W.2d at 374.

We overrule appellant's points of error two and three.